STATE of Maine

v.

Charles E. BISHOP.

Supreme Judicial Court of Maine.

Sept. 29, 1978.

Michael Seitzinger (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, Frank F. Harding, Dist. Atty., Rockland, for plaintiff.

Little & Watkinson by Stephen A. Little (orally), Rockland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Defendant Charles Bishop, an inmate at Maine State Prison, appeals from his conviction for trafficking in prison contraband in violation of 17–A M.R.S.A. § 757 (Supp. 1978).[1] We deny the appeal.

1. 17–A M.R.S.A. § 757 states in part:
 "1. A person is guilty of trafficking in prison contraband if:

 . . . . .

The record warranted the jury's making the following findings of fact. Defendant was serving a 7½ to 20 year sentence at Maine State Prison. On December 5, 1977, Bishop participated in a basketball game in the prison gymnasium which pitted a group of inmates against a team of nonprison civilians. Following the game, prison guards conducted a "routine" search of defendant and his teammates in which "you just take their clothes off and check them." A guard ordered Bishop to take off his clothes, and defendant complied. Before removing his undershorts, Bishop pulled out a small bag wrapped in black tape and handed it to the guard. Chemical analysis later revealed that the bag contained marijuana, although the evidence admitted before the jury did not establish the exact amount.

Defendant alleges four grounds for challenging his conviction, namely: (1) that the guard's ordering defendant to strip constituted an illegal search and seizure in violation of the federal (U.S.Const. amends. XIV, IV) and state (Me.Const. art. I, § 5) constitutions; (2) that a chemist's certificate admitted in evidence to establish that the bag contained marijuana was inadmissible hearsay; (3) that the presiding justice erred by not imposing any sanction upon the prosecution for failing, in violation of Rule 16(a)(1)(A)(i), M.R.Crim.P., to provide defendant with a statement describing evidence to be used at trial which had been obtained through a search of defendant; and (4) that marijuana does not constitute "contraband" within 17–A M.R.S.A. § 757. We reject each contention.

### I.

*Legality of the Search and Seizure*

Before addressing the merits of defendant's challenge to the constitutionality of the search, it is necessary to consider the State's argument that defendant waived his right to object to the admission of evidence

 "B. Being a person in official custody, he intentionally makes, obtains or possesses contraband."

of the marijuana by failing to make the motion to suppress prior to trial pursuant to Rule 41(e), M.R.Crim.P. Rule 41(e) provides in part:

> "A person aggrieved by an unlawful search and seizure may move the Superior Court in the county in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that . . . [t]he property was illegally seized without warrant . . . .
>
> .   .   .   .   .
>
> "*The motion shall be made before trial* or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." (Emphasis added)

This court has previously reserved decision on this issue. In *State v. Hazelton*, Me., 330 A.2d 919, 922 n. 3 (1975), holding that a pretrial motion to suppress "saves defendant's point for appellate review" without repeating the motion at trial, we withheld judgment on the question "whether Maine should adopt the prevailing federal practice that, in general, a defendant loses his right to object to the admissibility as evidence at trial of matters which he could have moved, but failed to move, to suppress prior to trial." *Accord, State v. Parkinson*, Me., 389 A.2d 1, 6 (1978).

■ There remains no reason now why we should not enforce, at least prospectively, the clear language of Rule 41(e). The language of Rule 41(e) is direct and unequivocal: "The motion *shall* be made before trial or hearing" unless specifically designated circumstances warranting a departure from the general rule exist. (Emphasis added) The use of the word "shall" makes compliance mandatory.

Furthermore, there are strong policy reasons in favor of enforcing the rule. Those reasons are well stated in the comment to Rule 451(c)(4) of the Uniform Rules of Criminal Procedure (1974), as follows:

"Requiring the motion to suppress to be made before trial is supported by the following considerations: (1) the pretrial motion assists orderly presentation of evidence at trial by eliminating from the trial disputes over police conduct not immediately relevant to the question of guilt; (2) it avoids the possibility of having to declare a mistrial because the jury has been exposed to unconstitutional evidence; (3) it spares the state as well as the defense the expense of useless trials in cases where a purely legal determination by the judge alone will settle disposition of the case; (4) by giving the prosecutor advance notice of defendant's objection (or lack thereof), the pretrial motion enables the prosecutor to determine which officers, if any, must be available to testify at the hearings on any pretrial motion and at trial; (5) it facilitates prosecution and defense preparation for trial (and possibly plea negotiation) by giving them advance knowledge of the evidentiary status of the seized items; and (6) by requiring that objection be made before defendant is placed in jeopardy, it facilitates utilization of provisions for interlocutory appeal by the prosecution. These considerations will ordinarily offset the inconvenience of police officers having to appear at the suppression motion hearing and then, if the motion is denied, at the trial; in the exceptional case where the inconvenience to witnesses appears to outweigh the advantages cited, the court may schedule the hearing immediately before or even during the trial so as to minimize or eliminate such inconvenience." *Id.* at 215.

*See also* American Law Institute, *A Model Code of Pre-Arraignment Procedure* § 290.-1(2) (1975) and commentary therein, *id.* at 557.

Although the pretrial motion requirement of Rule 41(e) was imposed by the Maine Rules of Criminal Procedure as originally promulgated by this court to be effective December 1, 1965, subsequent events add force to the reasonableness of its enforcement now in strict accordance with its plain terms. Maine trial courts now follow the

uniform practice of appointing counsel for indigent criminal defendants at an early stage in the proceeding; and by the January 3, 1978 amendment adding the "automatic discovery" provision of Rule 16(a) to the criminal rules, defense counsel have the benefit of being informed by the prosecution "within a reasonable time" of any evidence intended to be used at trial which was obtained through a search and seizure. Furthermore, in 1968 the Maine legislature for the first time gave the State the right to appeal a pretrial order suppressing evidence, P.L. 1968, ch. 547; to permit defense counsel to delay raising the suppression issue until after jeopardy attaches would frustrate the legislative objective of protecting the prosecution from legally erroneous suppression orders.

██ Rule 41(e) does, of course, recognize two exceptions to its requirement that all motions to suppress be made before trial. First, the waiver will not be imposed in situations where the defendant lacked an opportunity to make a pretrial motion to suppress or had no notice of the grounds for such a motion prior to trial. Early compliance by the prosecution with the "automatic discovery" provision of Rule 16(a)(1)(A)(i), M.R.Crim.P., would normally give the defense both notice and a timely opportunity to make the pretrial suppression motion. Thus, occasion for permitting a late motion should be infrequent under the rules. Second, Rule 41(e) also permits the presiding justice "to entertain the motion at the trial or hearing." This exception, however, does not permit such action by the presiding justice at will, without his discretion being subject to review for principled exercise. There must be good cause shown to authorize such a departure from the customary rule. *Cf.* Rule 451(c), Unif. R.Crim.P., *supra* ("Unless otherwise ordered by the court for cause shown"). There may be countervailing considerations,[2] such as the availability of witnesses at trial, but not before, that will constitute cause for hearing and deciding the motion at trial on the request of either the defense or prosecution. However, the six public policy reasons well stated in the above-quoted comment to the Uniform Rules of Criminal Procedure should not be lightly overridden.

██ In the instant case, although aware that the State had seized marijuana from his possession, defendant failed to utilize his opportunity to file a pretrial motion to suppress. However, given our past reluctance to require adherence to the requirement of Rule 41(e), upon which defense counsel may have relied, we will here consider on its merits defendant's challenge to the constitutionality of the search and seizure. Recognizing that in determining the effect of our rulings it is permissible for us to choose "between the principle of forward operation and that of relation backward,"[3]

---

2. The fact that the Superior Court justice who will sit at trial is different from the justice hearing pretrial motions is *not* adequate cause by itself to depart from the usual rule. Rule 41(e) provides that the motion is made to the Superior Court, without the slightest suggestion of a limitation to the justice who is to preside at trial. In our circuit system the Superior Court justice who happens to be hearing motions when the motion to suppress is presented must hear and decide that motion, barring extraordinary circumstances other than the fact that he does not expect to preside at trial.

3. *Great Northern Ry. v. Sunburst Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932). In upholding the Montana Supreme Court's prospective application of a rule interpreting a state railroad rate-fixing statute which overruled an earlier case, the Court stated:

"A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly, that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted." (Emphasis in original) *Id.* at 364, 53 S.Ct. at 148.

See also *Douglass v. County of Pike*, 101 U.S. 677, 25 L.Ed. 968 (1829), in which the Court equated a change in judicial construction of a statute with a legislative amendment:

"The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a

we hold that enforcement of Rule 41(e) adopted herein will apply only to prosecutions hereafter commenced and pending prosecutions in which reasonable time remains to permit the suppression motion to be made, heard and ruled upon without delaying the start of a scheduled trial.

■ Our review of the merits of defendant's claim that his constitutional rights were infringed under the circumstances of this case reveals nothing that by any possibility would justify exclusion of the analysis of the contents of the bag seized during the prison search. Defendant was returning to the secure areas of the prison after having had contact with outsiders under circumstances in which passage to him of prohibited material could easily escape detection. He was ordered to remove his clothes. Before completely stripping, he handed over the bag of marijuana to the guard. Under the facts of this case, this search and seizure in no way ran afoul of either the federal or state constitution.

## II.

### Admissibility of Chemist's Certificate

■ Defendant argues that the presiding justice erred in admitting in evidence a sworn chemist's certificate establishing that the substance taken from defendant was marijuana over defendant's objection that the certificate constituted inadmissible hearsay. The court's resolution of this issue turns on the proper interpretation of 17–A M.R.S.A. § 1112(1) (Supp.1978), which creates a statutory exception to the hearsay rule for sworn chemist's certificates that establish the content of substances submitted to qualified laboratories for analysis. Section 1112(1) provides in full:

"A laboratory which receives a drug or substance from a law enforcement officer or agency *for analysis under this chapter* shall, if it is capable of so doing, analyze the same as requested, and shall issue a certificate stating the results of such analysis. Such certificate, when duly signed and sworn to by a person certified as qualified for this purpose by the Department of Human Services under certification standards set by that department, shall be admissible in evidence in any court of the State of Maine, and shall be prima facie evidence that *the composition and quality of the drug or substance is as stated therein,* unless with 10 days written notice to the prosecution, the defendant requests that a qualified witness testify as to such composition and quality." (Emphasis added)

Section 1112(1) appears in chapter 45 of the Maine Criminal Code, and defendant claims that the phrase "under this chapter" in the first sentence limits the application of the section to prosecutions for chapter 45 offenses.[4] Defendant was prosecuted for trafficking in prison contraband, a chapter 31 offense.

We find no support for defendant's restrictive reading of section 1112. The only words imposing any limitation to trial of a chapter 45 offense appear in the first sentence in the phrase "for analysis under this chapter." The reference plainly is to analysis of the drug or substance for purposes of determining its "composition and quality" under such sections of chapter 45 as section 1101 ("Definitions") and section 1102 ("Schedules W, X, Y and Z"). The substance in the seized bag was analyzed to be "marijuana," which is defined in section 1101(1) and is classified as a Schedule Z

legislative amendment; that is to say, make it prospective, but not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment." *Id.* at 687.

See generally Traynor, "Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility," 28 *Hastings L.J.* 533 (1977); Annot., 14 L.Ed.2d 992 (1966).

4. 17–A M.R.S.A. ch. 45, § 1103 prohibits the "unlawful trafficking" in a scheduled drug defined in 17–A M.R.S.A. § 1102 and not subject to the exceptions stated in section 1103(1).

substance by section 1102(4)(B). The consequences of that analysis in court proceedings are determined at various other places in the statutes, both in and outside chapter 45 of the criminal code. The second sentence of section 1112 makes a statutory exception to the hearsay rule for a proceeding "in any court of the State of Maine," in terms without limitation to a prosecution for a chapter 45 offense or even to a criminal prosecution.

In the case at bar the prosecution is for an offense defined in chapter 31 of the criminal code proscribing the trafficking by a prison inmate in "any . . . thing which a person confined in official custody is prohibited by statute or regulation from . . . possessing." [5] 17–A M.R.S.A. § 756. Then, in turn, that element of the offense is made out, the State argues, by the fact that under 22 M.R.S.A. § 2383 (Supp.1978) "[p]ossession of a usable amount of marijuana is a civil violation for which a forfeiture of not more than $200 may be adjudged." The legislature evinced no intention to restrict the use of its statutory hearsay exception to the very narrow limits urged by defendant. On the contrary, the beneficient purpose of avoiding needless waste of the chemist's time and effort is equally present whatever the type of proceeding involved. The inherent trustworthiness of the chemist's certificate, and the effectiveness of giving the party against whom it is to be offered an opportunity to require the chemist's presence, depend not at all on the nature of the criminal prosecution in which his certificate is offered in evidence. There is no conceivable reason for the legislature to limit its statutory hearsay exception in the way here urged by defendant. We hold that it has not done so.

### III.

#### *Failure of the Prosecution to Provide Automatic Discovery*

■ Maine's new "automatic discovery" provision, Rule 16(a)(1)(A)(i), M.R. Crim.P., which became effective January 3, 1978, states in pertinent part:

"The attorney for the State shall furnish to the defendant within a reasonable time . . . [a] statement describing any testimony or other evidence intended to be used against the defendant which . . . [w]as obtained as a result of a search and seizure . . . ." [6]

Rule 16(d), M.R.Crim.P., prescribes the sanctions that may be imposed for the State's failure to comply with the automatic discovery requirement:

"If the attorney for the State fails to comply with this rule, the court on motion of the defendant or on its own motion *may* take appropriate action, which *may include, but is not limited to*, one or more of the following: *requiring the attorney for the State to comply*, granting the defendant additional time or a continuance, relieving the defendant from making a disclosure required by Rule 16A, prohibiting the attorney for the State ·from introducing specified evidence and

---

5. *See further discussion of the definition of* "contraband" in part IV of this opinion.

6. Rule 16(a), M.R.Crim.P., reads in full as follows:

"(a) Automatic Discovery.

"(1) *Duty of the Attorney for the State.* The attorney for the State shall furnish to the defendant within a reasonable time:

"(A) A statement describing any testimony or other evidence intended to be used against the defendant which:

"(i) Was obtained as a result of a search and seizure or the hearing or recording of a wire or oral communication;

"(ii) Resulted from any confession, admission, or statement made by the defendant; or

"(iii) Relates to a lineup, showup, picture, or voice identification of the defendant;

"(B) Any written or recorded statements and the substance of any oral statements made by the defendant.

"(C) A statement describing any matter or information known to the attorney for the State which may not be known to the defendant and which tends to create a reasonable doubt of the defendant's guilt as to the offense charged.

"(2) *Continuing Duty to Disclose.* The attorney for the State shall have a continuing duty to disclose the matters specified in this subdivision."

dismissing charges with prejudice." (Emphasis added)

The State seized marijuana from defendant and at trial offered the marijuana, photographs of the marijuana, and a sworn chemist's certificate in evidence. However, the prosecuting attorney had not furnished defendant with the statement required by Rule 16(a)(1)(A)(i), and at trial defendant objected to admission of the evidence. The presiding justice overruled the objection and imposed no sanction for the violation of the rule, finding that the indictment and the circumstances of the seizure effectively forewarned defendant that evidence relating to the marijuana would be introduced at trial. On appeal defendant asserts this ruling constitutes reversible error.

We uphold the lower court's ruling. By the express terms of Rule 16(d), the presiding justice "may" take "appropriate" action to remedy a violation of Rule 16(a). The imposition of a sanction is not mandatory. The "appropriate" sanction may be nothing at all.

In the instant case the presiding justice properly found that defendant was not prejudiced by the failure of the prosecutor to comply with the automatic discovery rule. Prison authorities seized the marijuana directly from defendant. Defendant was consequently put on notice of the likelihood that the marijuana or evidence establishing the content of the seized bag would be introduced at trial. Further, the indictment specifically charged that defendant "did traffic in prison contraband by intentionally possessing contraband, to wit, 69 grams of marijuana." Given these special circumstances indicating that defendant was apprised of the likelihood that the marijuana or evidence of the marijuana would be introduced at trial, the presiding justice's decision not to impose a sanction for violation of the "automatic discovery" rule cannot be said to be an abuse of discretion.

Although no sanction was imposed in this case for the State's noncompliance with Rule 16(a), we cannot emphasize too strongly the necessity for prosecutors to set up and maintain a system for routine and timely disclosure to defense counsel of the information listed in subdivision (a)(1). The adoption as of January 3, 1978, of new Criminal Rule 16, relating to discovery from the prosecution, and of its counterpart Rule 16A, relating to discovery from the defendant, was intended to enhance the quality of the pretrial preparation of both the prosecution and defense and to avoid surprises at trial—all to the end of making the result of criminal trials depend upon the merits of the case rather than on the demerits of lawyer performance on one side or the other. It is true that automatic revelation to the defense of all the items listed in Rule 16(a)(1) may, as in the instant case, merely tell defense counsel something that he already knows or has reason to know. However, only by having an established system that operates automatically for such disclosure will the State effectuate the purpose of the new rule and be sure to avoid the imposition of sanctions that could cripple an otherwise meritorious prosecution.

## IV.

*Whether "Contraband" Includes Marijuana*

■ Defendant's final claim is that prison "contraband" does not include marijuana. 17–A M.R.S.A. § 757 defines "contraband" by reference to 17–A M.R.S.A. § 756, subsection 2, which provides:

"As used in this section, 'contraband' means a dangerous weapon, any tool or other thing that may be used to facilitate a violation of section 755, or *any* other *thing which a person confined in official custody is prohibited by statute or regulation from* making or *possessing.*" (Emphasis added)

Defendant makes two arguments. First, noting that 17–A M.R.S.A. § 755 referred to in the first sentence of section 756 deals with escapes from official custody, defendant contends that "contraband" includes only those "things" which aid in escapes. Second, defendant argues that the term "prohibited by statute" in the second sen-

tence of the statute refers to criminal, not civil prohibitions.[7]

We find no merit in defendant's position. The definition of "contraband" in section 756, incorporated by reference into section 757, reaches beyond the instrumentalities of escape to include in broad terms "any other thing which a person confined in official custody is prohibited by statute or by regulation from making or possessing." The possession of marijuana is prohibited by statute. 22 M.R.S.A. § 2383 makes possession of a "usable amount of marijuana" a civil violation. Nothing in the language of section 756 or 757 excludes "things" subject to civil prohibition from the "contraband" that an inmate is prohibited from possessing.

Accordingly, the entry must be:

Appeal denied.

Judgment affirmed.

ARCHIBALD, J., did not sit.

---

**7.** At trial the presiding justice ruled that the statutory hearsay exception did not extend to the *quantity* of marijuana reported in the chemist's certificate. Consequently, there was no evidence admitted before the jury to support the allegation in the indictment that defendant possessed 69 grams (over 2.4 ounces) of marijuana. Without deciding whether the ruling of the presiding justice was correct, we must assume, on this state of the record, that defendant was convicted of possessing less than 1½ ounces of marijuana, the amount necessary to trigger the statutory presumption that defendant committed the criminal offense of furnishing scheduled drugs under 17–A M.R.S.A. § 1106(3). Possession of less than 1½ ounces of marijuana by persons other than prison inmates generally constitutes a civil violation, subjecting defendants to a forfeiture not to exceed $200 under 22 M.R.S.A. § 2383.