**STATE of Maine**

v.

**Roger LeGASSEY.**

Supreme Judicial Court of Maine.

Argued Nov. 17, 1982.

Decided Feb. 17, 1983.

Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Norman S. Heitmann, III (orally), East Millinocket, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

GODFREY, Justice.

Charged with operating under the influence of intoxicating liquor under 29 M.R. S.A. § 1312–B (Supp.1981),[1] defendant-appellee Roger LeGassey moved for the suppression of evidence. From an order of the District Court in Millinocket granting the motion to suppress, the state appeals pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp. 1982). We affirm the judgment ordering suppression.

From the testimony at the suppression hearing, the presiding judge found the following facts: On the evening of February 1, 1982, Irvin Caverly, an off-duty Baxter State Park ranger, was driving along Route 157 in Indian Purchase 3 Township. He came upon a Subaru, which had plunged into a snowbank, and the defendant, who was standing in the road. Caverly and other passers-by stopped and pulled the Subaru from the snowbank to the side of the road.

After discussing the accident with the defendant, Caverly radioed the state police, placed the defendant in the ranger's truck, which bore state insignia, and told him to stay there. Caverly then turned on the blue light of the truck. The defendant considered himself under arrest and not free to leave. Caverly was not in uniform.

1. Amended by P.L.1981, ch. 679, §§ 29, 30, 31, eff. April 15, 1982.

State Trooper John Otis, who received the radio message, arrived within thirty to forty-five minutes. Caverly told Otis his impression of what had happened. Otis then took the defendant to his cruiser, decided the defendant was under the influence of alcohol, read the *Miranda* warning, and asked the defendant if he had been driving. The defendant admitted he had. Otis read an implied consent form and the defendant elected to take a breath test, which Otis administered.

Defendant moved to suppress all statements made by him and all physical evidence based on his initial detention by Ranger Caverly. At the suppression hearing, for some unexplained reason, the state did not produce Caverly as a witness although testimony from him would be crucial in determining whether the initial detention of defendant was supported by probable cause. The only evidence pertinent to that question was hearsay testimony by Otis, who said that Caverly told him he believed defendant had been operating the vehicle and "was drunk." The presiding judge ordered defendant's statements to Otis and his breath-test results to be suppressed as the fruit of an unconstitutional seizure by Caverly.

The site of the accident is not within Baxter State Park. The presiding judge decided that Caverly had no authority, either as a ranger[2] or as a private citizen,[3] to arrest the defendant; that Caverly's detention of the defendant was a "seizure" within the terms of the fourth amendment, and that the state failed to meet its burden of establishing that Caverly had probable cause to arrest or detain the defendant.[4] The state on appeal does not contest any of those decisions. Instead, the state argues that the exclusionary rule does not apply because Caverly acted as a private citizen. Alternatively, the state argues that, even if Caverly acted in his official capacity, exclusion of the evidence is not mandated, citing *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

The fourth amendment is a limitation on government action only; generally speaking, evidence obtained by private illegal searches need not be excluded in a criminal trial. *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). See 1 W. LaFave, *Search and Seizure* § 1.6 at 113 (1978); Annot., 36 A.L.R.3d 553 (1971). The question here is whether Caverly, an off-duty law enforcement officer, should be deemed to have made a purely private seizure. The answer turns on whether Caverly was "at that time acting as a private individual rather than as a policeman." 1 W. LaFave, *supra,* at 133.

Here, Caverly acted as a policeman. To be sure, a good-Samaritan private citizen might stop to help a stranded motorist on a winter evening, but when Caverly detained the defendant after the car was back on the road, he adopted the role of policeman. The defendant's detention by Caverly thus constituted a governmental seizure of the person, subject to the exclusionary rule unless shown to be reasonable. The state failed to produce sufficient evidence at the suppression hearing to show that

2. Baxter State Park rangers have authority to make arrests under 12 M.R.S.A. § 905 (1981), which provides in pertinent part, as follows:
   [Rangers] are authorized and empowered to arrest with or without warrant any person within the State who is committing, or to detain, until a warrant has been obtained, any person within the State who has been seen by said [rangers] committing any offense against the state laws, or any violation of any rule ... of the ... Authority within said park ....
   It is not necessary in this case to decide whether an exclusionary rule applies to the fruits of an arrest exceeding statutory authority but made with probable cause.

3. *See* 17–A M.R.S.A. § 16 (1983).

4. The state bore the burden of showing the reasonableness of the warrantless seizure. *State v. Philbrick,* 436 A.2d 844 (Me.1981). The focus of the probable cause inquiry is the information *possessed by Caverly* when he detained the defendant. Caverly never testified at the suppression hearing. The hearsay testimony of Otis was insufficient to show probable cause.

Caverly's seizure of defendant was reasonable.

The defendant concedes that Trooper Otis's interrogating him and giving him a breath test did not, by themselves, violate the Constitution. Thus, the question becomes whether the primary illegality—the detention by Caverly—tainted otherwise admissible evidence; namely, the defendant's admissions to Otis and the breath-test results. In *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), the Supreme Court posed the question as "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *See generally* 3 W. LaFave, *Search and Seizure* § 11.4 (1978); Pitler, *"The Fruit of the Poisonous Tree" Revisited and Shepardized,* 56 Calif.L.Rev. 579 (1968); Annot., 43 A.L. R.3d 385 (1975).

In *Brown v. Illinois,* the Supreme Court established a framework for applying the *Wong Sun* test to confessions, otherwise admissible, that are the fruit of an illegal arrest. The question of suppression must be resolved in light of the following factors: (1) the voluntariness of the statement; (2) the giving of *Miranda* warnings; (3) the closeness in time of the arrest and the confession; (4) the presence of intervening circumstances; and (5) particularly, the purpose and flagrancy of the official misconduct. 422 U.S. at 603–04, 95 S.Ct. at 2261–62. The Law Court has applied the criteria of *Brown v. Illinois* both to confessions, *State v. Bleyl,* 435 A.2d 1349 (Me.1981); *State v. Ann Marie C.,* 407 A.2d 715 (Me. 1979); *State v. Turner,* 394 A.2d 798 (Me. 1978), and to non-testimonial evidence, *State v. McKenzie,* 440 A.2d 1072 (Me.1982). Hence, the reasoning of *Brown v. Illinois* is applicable to both the defendant's admissions and his breath-test results.

In the present case, the defendant does not deny that he received the *Miranda* warnings or that he voluntarily took the breath test and admitted to being the operator of the car. The invalid seizure occurred only thirty to forty-five minutes before the breath test and admission, without any intervening circumstances. There is no evidence that Caverly (or Otis) threatened or abused the defendant. On the other hand, neither is there evidence to suggest Caverly believed in good faith that he had authority to detain the defendant.

We find that the obvious connection between the invalid seizure and the evidence obtained was not dissipated by the defendant's consent and the *Miranda* warnings. A finding of "voluntariness" for purposes of the fifth amendment is merely a "threshold requirement" for fourth amendment analysis. *Taylor v. Alabama,* —— U.S. ——, 102 S.Ct. 2664, 2668, 73 L.Ed.2d 314 (1982); *Rawlings v. Kentucky,* 448 U.S. 98, 107, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980); *Dunaway v. New York,* 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. at 604, 95 S.Ct. at 2262; *McKenzie,* 440 A.2d at 1077; *Turner,* 394 A.2d at 800. Similarly, *Miranda* warnings alone cannot break the causal connection between the illegality and the ensuing consent. *Brown v. Illinois,* 422 U.S. at 603, 95 S.Ct. at 2261; *McKenzie,* 440 A.2d at 1077.

Predominant here are (1) the closeness in time between Caverly's seizure of defendant and the resulting acquisition of evidence by Otis, and (2) the absence of intervening circumstances. Where no intervening events broke the connection between the illegal detention and the resulting evidence, the absence of threats or abuse did not cure the illegality. *Taylor v. Alabama,* 102 S.Ct. at 2669; *Dunaway,* 442 U.S. at 218–19, 99 S.Ct. at 2259–60; *McKenzie,* 440 A.2d at 1077 ("Courtesy does not dissipate the taint created by an invalid stop.")[5]

---

**5.** A congenial atmosphere during the detention may compensate for closeness between the arrest and the confession. *Rawlings,* 448 U.S. at

107–08, 100 S.Ct. at 2562–63. Here, unlike *Rawlings,* however, there is no testimony about the tone of conversation between Caverly and

 

The entry is:
Judgment affirmed.

All concurring.

the defendant as they waited for Otis to arrive. Moreover, the back seat of a state truck with a

flashing blue light is a less congenial setting than the defendant's living room in *Rawlings.*