STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, SS.                                   CRIMINAL ACTION
                                                  Docket No.    CR-04-1869
                                                  7ED - CU /\/\    ∋/

STATE OF MAINE

         v.                                       DECISION AND ORDER
                                                  ON DEFENDANT'S
                                                  MOTION TO SUPPRESS
THOMAS BINNIE,
         Defendant

## I. STATUS OF THE CASE

The defendant is charged by complaint with operating under the influence of

intoxicants or with excessive blood-alcohol, 29-A M.R.S.A. § 2411(1), Class 'D'.[1]

After pleading not guilty, the defendant filed a timely notice and demand for

jury trial. M.R.Crim.P. 22(a). Through counsel he also filed three motions to suppress

evidence.[2] The defendant seeks to exclude from evidence at trial any statements made

by the defendant, the results of any field sobriety tests, any observations made of the

defendant subsequent to the initial stop and the results of any tests relative to the

defendant's blood-alcohol level at the time. The grounds of the motion are that the

probation officer who caused the stop of the defendant had no lawful authority to do

---

[1] The complaint alleges the defendant had a blood-alcohol level of 0.14%

[2] Two of the motions sought to exclude evidence of any statements made by the defendant to any law enforcement officers, all sobriety tests, results of chemical tests and all observations by the arresting officer concerning defendant's lack of sobriety. They were withdraw prior to hearing. The remaining motion is sufficiently broad to cover all of the issues raised in the two other motions.

The court recognizes counsel's duty to challenge evidence gathered during an investigation that the State may seek to use against the defendant; however, counsel should refrain from filing multiple motions that seek the same relief on similar issues. Even though two of the motions here were withdrawn prior to hearing, the mere filing of multiple motions on the same or similar issues creates an unnecessary clerical burden on the clerk of court. Each separate motion must be date stamped as received, physically placed in the file folder, entered onto the docket of the case and be scheduled and listed for hearing. To the extent that counsel seek to suppress multiple pieces of evidence, or to have evidence suppressed on different grounds, the court would encourage counsel to file only one motion but present the issues in multiple parts. This will significantly reduce the clerk's duties on each case.

so. The court held an evidentiary hearing from which it concludes that defendant's motion must be granted.

## II. FACTUAL BACKGROUND

Based on the evidence presented at the hearing the court makes the following findings of fact.

Michael Hulit has been employed by the State of Maine Department of Correction for approximately eight years as a probation and parole officer.

On July 1, 2004 at approximately 9:00 P.M. he was operating his personal Ford Ranger pick-up truck and was entering Interstate 295 northbound from Franklin Arterial (Exit 7) in Portland. His teenage son was a passenger in the truck. As he pulled into the travel lanes he noticed a vehicle coming up behind him at a "high rate of speed," approximately 55 mph in a 50 mph zone. This vehicle passed him on the right at a high speed and he watched as it "weaved in and out" in the "moderate" traffic. It continued to speed along for about a ½ to ¾ of a mile until exiting at Exit 9 onto U.S. Route 1. He was concerned at the vehicle's speed, "the manner of negotiation," and thought it would kill somebody. Hulit did not see any police vehicles in the vicinity and unsuccessfully tried to contact a State trooper on the Maine State Police radio in his truck. As the vehicle exited the interstate highway towards U.S. Route 1, Hulit initiated a stop by using a flashing blue light he had installed in his truck.[3]

---

[3] At the hearing Hulit refused to testify as to the means he used to stop the vehicle. He exercised his 5th Amendment right to remain silent. Other evidence showed that he used a flashing blue light to stop the vehicle. On the date of the events here, blue lights were not permitted to be used on any vehicle except police vehicles, a Department of Corrections vehicles responding to an escape or in the transfer of a high security prisoner, by a sheriff, a deputy sheriff, a qualified person while in performance of court security related functions and services or certain antique vehicles. *See*, 29-A M.R.S.A. § 2054 (1)(B)(6) and (2)(D), supp. 2003, rewritten, P.L. 2003, c. 510, § C-8(2) which for the purposes of this case has the same limitations.

The defendant pulled over and stopped on the shoulder of Exit 9. Hulit approached the defendant's car on the passenger side. When the defendant rolled down the window Hulit detected a "strong odor of intoxicating beverage." He showed the defendant a badge and told him that he was a law enforcement officer. When he asked the driver for his license and registration, the defendant said he had not been drinking.

Hulit then used his cellular phone to call the State Police barracks in Gray to request a trooper to come to the scene. None were available so he called the Portland Police Department. He had not attempted to call the Portland police prior to the stop

Two Portland police officers arrived about 20 minutes later. They took over the investigation, arrested the defendant and had him submit to a blood-alcohol test.

Hulit is an experienced probation officer who has received training as a probation officer in how to approach a stopped vehicle, but he has not received training in the pursuit or stopping of vehicles nor does he have any training as a law enforcement officer from a prior position.

## III. DISCUSSION

### A. Arrest power of probation officer (34-A M.R.S.A. § 5404)

The primary issue is whether Michael Hulit, in his capacity as a probation officer, has the authority to conduct a motor vehicle stop and arrest as he did here.

The court finds that Hulit's conduct in stopping the vehicle with the use of a flashing blue light, informing the defendant he was a law enforcement office, displaying a badge, asking for his license and registration, asking if he had been drinking, attempting to contact the State Police, requesting Portland police officers to come to the

3

scene and keeping the defendant there, constitutes an arrest and detention of the defendant.

In the State of Maine probation officers are vested with statutory authority to make arrests without a warrant:

> In addition to duties prescribed by the director and by the court having jurisdiction, a probation and parole officer shall:
>
> **1. Investigation.** Investigate any criminal case or matter concerning probation or parole referred to him for investigation and report the result of the investigation;
>
> **2. Arrest.** Arrest in the following circumstances:
>
> **A.** Arrest and return probation and parole violators upon request of the chief administrative officer of a correctional facility;
>
> **B.** Arrest and return to a correctional facility persons released from the correctional facility . . . ; and
>
> **C.** If the officer has probable cause to believe that a person under the supervision of the Division of Probation and Parole has violated a condition of his probation or parole, he may arrest that person. [4]
>
> \* \* \*

34-A M.R.S.A. § 5404. Thus, under this statute, Hulit's powers are limited and he exceeded his authority to stop and arrest Mr. Binnie.

**B. Authority to arrest as a private person (17-A M.R.S.A. § 16)**

Hulit was also not allowed to effect a "citizen's arrest." The authority for a private person to arrest without a warrant is limited to certain criminal acts contained in Maine's criminal code. *See* Title 17-A M.R.S.A. § 16:

**Warrantless arrests by a private person**

> Except as otherwise specifically provided, a private person shall have the authority to arrest without a warrant:

---

[4] The commission of a new crime is a violation of probation, 17-A M.R.S.A. § 1204(1), but the authorizations to arrest exists only because the person is on probation and not for the criminal conduct itself.

**1.** Any person who he has probable cause to believe has committed or is committing:

**A.** Murder; or

**B.** Any Class A, Class B or Class C crime.

**2.** Any person who, in fact, is committing in his presence and in a public place:

**A.** Any of the Class D or Class E crimes described in [certain] sections [of Title 17-A].

\* \* \*

## C. Authority to arrest as a law enforcement officer for motor vehicle offenses (29-A M.R.S.A.)

Maine's Motor Vehicle Code, Title 29-A, allows a law enforcement officer to stop a vehicle for three specific purposes:

**1. Authority to stop motor vehicle.** If a law enforcement officer has reasonable and articulable suspicion to believe that a violation of law has taken or is taking place, that officer, *if the officer is in uniform,* may stop a motor vehicle for the purpose of:

**A.** Arresting the operator for a criminal violation;

**B.** Issuing the appropriate written process for a criminal or civil violation or a traffic infraction; or

**C.** Questioning the operator or occupants.

29-A M.R.S.A. § 105(1) (emphasis added).

Hulit had sufficient reason to believe the vehicle was speeding, 29-A M.R.S.A. § 2074; however, he was not in uniform as required under the statute. There would appear to be a good public policy reason for that requirement: That when an officer is attempting to stop a moving vehicle, his or her identification ought not be questioned. A uniform provides indicia of police authority that is readily apparent to the person that the officer is stopping or investigating.

Title 29-A also defines "law enforcement officer" for purposes of enforcing the motor vehicle laws:

> **30. Law enforcement officer.** "Law enforcement officer" means a person who by virtue of public employment is vested by law with a duty to maintain public order or to make arrests for crimes, whether that duty extends to all crimes or is limited to specific crimes.

29-A M.R.S.A. § 2(30).

Hulit is a public employee within the Department of Corrections and is vested by statute with certain duties. His responsibilities, however, are not for the general enforcement of laws, or to generally maintain public order, or to make arrests not related to probation. *See,* 34-A M.R.S.A. § 5404, *supra.*[5] He is, therefore, not a "law enforcement officer" within the meaning of the Motor Vehicle Code, Title 29-A M.R.S.A.

## C. Authority to arrest as a law enforcement officer for criminal offenses (17-A M.R.S.A.)

Although the offense of operating under the influence is contained in the Motor Vehicle Code, 29-A M.R.S.A. § 2411, it is a Class D crime. The authority in our Criminal Code does not limit authorization for arrests to offenses within Title 17-A:

> **Warrantless arrests by a law enforcement officer**
>
> **1.** Except as otherwise specifically provided, a law enforcement officer may arrest without a warrant:
>
> > **A.** Any person who he has probable cause to believe has committed or is committing:
> >
> > > **(1)** Murder;
> > > **(2)** Any Class A, Class B or Class C crime;
> > > **(3)** Assault while hunting;
> > > **(4)** [Drug offenses[;
> > > **(5)** Assault . . . ;
> > > **(5-A)** [Domestic assault];

---

[5] A probation officer may arrest persons who are probation or parole violators at the request of the chief administrative officer of a correctional facility; arrest and return to a correctional facility persons who were released on an authorized work release or furlough program; and, arrest persons who have violated a condition of their probation or parole.

(6) Theft [of services];

(7) Forgery . . . ;

(8) Negotiating a worthless instrument . . . ;

**B.** Any person who has committed in his presence or is committing in his presence a Class D or Class E crime.

\* \* \*

17-A M.R.S.A. § 15.

The definition of a "law enforcement officer" under Title 17-A for purposes of enforcing criminal laws is slightly different than it is defined in the Motor Vehicle Code:

> **17.** "Law enforcement officer" means any person who by virtue of public employment is vested with a duty to maintain public order, to prosecute offenders, to make arrests for crimes whether that duty extends to all crimes or is limited to specific crimes, *to perform probation functions* or to perform intensive supervision functions.

17–A M.R.S.A. § 2(17) (emphasis added).[6] The 1989 statutory amendment was not added for the purpose of expanding the powers of a probation officer, but rather includes him in the definition of a "law enforcement officer" when he is performing a probationary function.

The court finds that Hulit was not acting as a probation officer and had no authority to stop and detain Mr. Binnie.

The fact that an officer acts outside the scope of his employment does not, *per se,* mean that any evidence gathered from the stop is automatically excluded at trial. The Law Court has permitted evidence to be admitted at trial where officers arrested persons outside their home jurisdiction. *State v. Rideout,* 2000 ME 194, 761 A.2d 288 (stop of vehicle by chief of police outside his home municipality violated fresh pursuit

---

[6] *P.L. 1989, c. 113, § 2(17), added the provisions relating to probation and intensive supervision functions.* The legislative history for this amendment is silent as to any over-all purpose, except to say that the Bill, L.D. 539, was offered as a "technical amendment" to aid in the enforcement of probation and "Intensive Supervised Probation," 17-A M.R.S.A., ch. 52, § 1261, *et seq.,* a special probation program offered as an alternative to incarceration, that is now in suspension due to lack of budgetary funding.

doctrine, 30-A M.R.S.A. § 2671(2), but sufficient probable cause existed); *State v. Pike*, 642 A.2d 145 (Me. 1994) ( officer detained driver 80 feet out of jurisdiction but had articulable suspicion and acted reasonably); *State v. Jolin*, 639 A.2d 1062 (Me. 1994) (where the fresh pursuit originated and the arrest occurred outside officer's jurisdiction, the 4th Amendment does not require exclusion of evidence where there is probable cause to arrest).

This case, however, presents a different situation: It is more like the matter of *State v. LeGassey*, 456 A.2d 366 (Me. 1983), where an off-duty park ranger detained the defendant outside his jurisdiction. Evidence was excluded because of a lack of probable cause. Here, Hulit had no authority to stop the Binnie vehicle unless it was related to a probation function.

The common factor in *Rideout, Pike and Jolin* is that even though the officers were outside their jurisdiction, the court found that probable cause existed, each officer was empowered to arrest for the offenses charged and each was acting in good faith, and in the case of *Rideout* acted at the request of the local dispatcher when a local officer was not available.

The Law Court recognized "the abuses that could follow an intentional or premeditated disregard of territorial limits." *Jolin*, at 1064. "Law enforcement officers should not make excursions into other jurisdictions to ferret out crime." *id.* (citations within omitted).

Although Binnie was speeding, Hulit, who had no training in vehicle pursuit, acted as an over-zealous "wanna-be" police officer who used his own un-marked pick-up truck with an unauthorized blue light to pursue a speeding and weaving vehicle on a high speed highway, placing himself, his teenage son and others in greater danger of

8

injury than if he had just called local police on his cell phone in the first place. This court cannot condone or encourage these actions.

## IV. DECISION AND ORDER

The clerk will make the following entry onto the docket as the Decision and Order of the court:

1. Defendant's Motion to Suppress is granted.

2. All evidence, including observations of defendant, statements by defendant, field sobriety tests and the results of any test to obtain the blood-alcohol content of the defendant are suppressed and may not be used as evidence at any trial of the defendant.

SO ORDERED.

DATED: February 4, 2005

Thomas E. Delahanty II
Justice, Superior Court

STATE OF MAINE
  vs
THOMAS   BINNIE
123 FORESIDE ROAD
FALMOUTH ME 04105

DOB: 02/23/1957
Attorney: JAMES BOULOS
         THE BOULOS LAW FIRM
         PO BOX 856
         75 NORTH ST
         SACO ME 04072-0856
         RETAINED 08/20/2004

SUPERIOR COURT
CUMBERLAND, ss.
Docket No   PORSC-CR-2004-01869

**DOCKET RECORD**

State's Attorney: STEPHANIE ANDERSON

Filing Document: CRIMINAL COMPLAINT                    Major Case Type: MISDEMEANOR (CLASS D,E)
Filing Date: 07/23/2004

## Charge(s)

1   **OPERATING UNDER THE INFLUENCE**              **07/01/2004 PORTLAND**
**Seq 9878   29-A   2411(1-A)(A)**          **Class D**
   **BLACK                   / POR**

## Docket Events:

09/10/2004 Charge(s): 1
         TRANSFER -  TRANSFER FOR JURY TRIAL EDI ON 09/10/2004 @ 22:02

         TRANSFERRED CASE: SENDING COURT CASEID PORDCCR200405751
         FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 07/23/2004

         Charge(s): 1
         HEARING -  ARRAIGNMENT SCHEDULED FOR 08/09/2004 @ 8:30  in Room No.  1

         Charge(s): 1
         HEARING -  ARRAIGNMENT WAIVED ON 08/09/2004

         Charge(s): 1
         PLEA -  NOT GUILTY ENTERED BY COUNSEL ON 08/09/2004

         TRIAL -  BENCH SCHEDULED FOR 08/31/2004 @ 10:30  in Room No.  1

         NOTICE TO PARTIES/COUNSEL
         TRIAL -  BENCH NOT HELD ON 08/30/2004

         TRIAL -  BENCH NOTICE SENT ON 08/10/2004

         Party(s):  THOMAS BINNIE
         ATTORNEY -  RETAINED ENTERED ON 08/20/2004

         Attorney:  JAMES BOULOS
         MOTION -  MOTION EXPERT WITNESS REPORT FILED BY DEFENDANT ON 08/20/2004

         MOTION -  MOTION FOR DISCOVERY FILED BY DEFENDANT ON 08/20/2004

INTOXILYZER
MOTION -  MOTION FOR DISCOVERY FILED BY DEFENDANT ON 08/20/2004


MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT ON 08/20/2004


MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT ON 08/20/2004


MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT ON 08/20/2004


MOTION -  MOTION FOR DISCOVERY FILED BY DEFENDANT ON 08/20/2004


Charge(s): 1
TRANSFER -  TRANSFER FOR JURY TRIAL REQUESTED ON 08/20/2004


Charge(s): 1
FINDING -  TRANSFER FOR JURY TRIAL TRANSFERRED ON 09/10/2004
DEBRA  SOUBBLE , ADMINISTRATIVE CLERK
PORSC
09/13/2004 Charge(s): 1
TRANSFER -  TRANSFER FOR JURY TRIAL RECVD BY COURT ON 09/10/2004
JOHN B GREENWOOD , ASSISTANT CLERK (ENTRY)
DOCKET RECORD RECEIVED FROM 9TH DISTRICT COURT #CR-2004-5751.  NO APPEARANCE BOND FILED.
10/07/2004 Charge(s): 1
HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 11/18/2004 @ 8:30
JOHN B GREENWOOD , ASSISTANT CLERK (ENTRY)
NOTICE  TO PARTIES/COUNSEL
10/07/2004 Charge(s): 1
HEARING -  MOTION FOR DISCOVERY SCHEDULED FOR 11/18/2004 @ 8:30
JOHN B GREENWOOD , ASSISTANT CLERK (ENTRY)
NOTICE  TO PARTIES/COUNSEL
10/07/2004 Charge(s): 1
HEARING -  OTHER MOTION SCHEDULED FOR 11/18/2004 @ 8:30
JOHN B GREENWOOD , ASSISTANT CLERK (ENTRY)
MOTION FOR EXPERT WITNESS REPORT.
11/17/2004 Charge(s): 1
HEARING -  MOTION FOR DISCOVERY NOT HELD ON 11/17/2004


11/17/2004 MOTION -  MOTION FOR DISCOVERY DISMISSED ON 11/17/2004
THOMAS E DELAHANTY II, JUSTICE
11/17/2004 MOTION -  MOTION FOR DISCOVERY DISMISSED ON 11/17/2004


11/17/2004 MOTION -  MOTION FOR DISCOVERY DISMISSED ON 11/17/2004
THOMAS E DELAHANTY II, JUSTICE
11/22/2004 Charge(s): 1
HEARING -  OTHER MOTION CONTINUED ON 11/18/2004
THOMAS E DELAHANTY II, JUSTICE
Attorney:  JAMES BOULOS
HEARING 12-2-04 @ 1:00 P.M.
                                                                M. PURVES
11/22/2004 MOTION -  MOTION EXPERT WITNESS REPORT GRANTED ON 11/17/2004
THOMAS E DELAHANTY II, JUSTICE
11/22/2004 MOTION -  MOTION TO SUPPRESS WITHDRAWN ON 11/18/2004
THOMAS E DELAHANTY II, JUSTICE

MOTION WITHDRAWN BY COUNSEL.

11/22/2004 Charge(s): 1
HEARING - MOTION TO SUPPRESS CONTINUED ON 11/18/2004
THOMAS E DELAHANTY II, JUSTICE
Attorney: JAMES BOULOS
HEARING SET 12-2-04 @ 1:00 P.M.

12/06/2004 HEARING - MOTION TO SUPPRESS HELD ON 12/02/2004
THOMAS E DELAHANTY II, JUSTICE
Attorney: JAMES BOULOS
DA: WILLIAM BARRY          Reporter: PHILIP GALUCKI
Defendant Present in Court

STATE'S WITNESSES HEARD. DEFENSE WITNESSES HEARD. AFTER HEARING, MOTION TO SUPPRESS IS
UNDER ADVISEMENT.

                                                    M. PURVES
12/06/2004 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 12/02/2004
THOMAS E DELAHANTY II, JUSTICE

12/21/2004 OTHER FILING - MEMORANDUM OF LAW FILED ON 12/15/2004
MARIAH PURVES , ASSISTANT CLERK (ENTRY)

02/07/2005 MOTION - MOTION TO SUPPRESS GRANTED ON 02/04/2005
THOMAS E DELAHANTY II, JUSTICE
COPY TO PARTIES/COUNSEL. 1.) DEFENDANT'S MOTION TO SUPPRESS IS GRANTED. 2.) ALL EVIDENCE,
INCLUDING OBSERVATIONS OF DEFENDANT, STATEMENTS BY DEFENDANT, FILED SOBRIETY TESTS AND THE
RESULTS OF ANY TEST TO OBTAIN THE BLOOD-ALCOHOL CONTENT OF THE DEFENDANT ARE SUPPRESSED
AND MAY NOT BE USED AS EVIDENCE AT ANY TRIAL OF THE DEFENDANT.

A TRUE COPY
ATTEST: _____
                    Clerk